I'll call our next case, Lacy Goggans v. United States Lacy Goggans v. United States Before I forget, Appellant is being represented by the Deckert Law Firm on a pro bono basis and we want to give our thanks to the firm for undertaking this. We're most appreciative when able counsel say yes when we call. So thank you very much. Thank you, Your Honor. May it please the Court, my name is Carolyn Isaac and I represent the appellant Lacy Goggans. I'd like to reserve three minutes for rebuttal, please. Granted. Mr. Goggans is serving a 25-year mandatory consecutive sentence that's based on a guess of what the jury might have found if they had been asked. In this case, we don't know because they weren't asked. All we have is a general verdict. There's no way of knowing, based on that general verdict, whether Mr. Goggans' 25-year sentence is actually based on a second conviction for use of a firearm in connection with a crime of violence or if it's based on the single use of a firearm in connection with a crime of violence, which would be only one 924C. Your theory is that a special interrogatory should have been submitted to the jury? Yes. Is that something that the other defendants also should have taken advantage of? I mean, this is a multi-defendant case. Would that be the case with any one of the defendants that it would have applied? It could have been, Your Honor. It wouldn't have hurt the other defendants to have the special interrogatory. But in this case, it was particularly important for Mr. Goggans to have it because he was situated differently from the other defendants. I realize it's difficult for you, but could you try and talk a little louder? Sure. As I was saying, Mr. Goggans was situated differently from the other defendants. And the evidence was different. Correct. Of his involvement. Right. Give us a little of that. Sure. So Mr. Goggans was not, and the government conceded that he was not present. He could not have been present for at least two of them. Right. But there's nine in total? There were nine completed bank robberies. That's correct. And then the one attempted, right? And the one attempted. And for the other nine bank robberies, and this was different, there was evidence as to the other, his co-defendants, but there was no DNA evidence lining Mr. Goggans up with any of the completed bank robberies. There were no fingerprints. Well, we, I'm sure the government would concede, it would be a much better case if we had better evidence. But, you know, if you look at the circumstantial evidence that was put forth, I mean, it looks like it's. Like he was guilty. I would never say that. What I was going to say was it looks like it would certainly meet a sufficiency challenge. And, you know, for six of them, as well as the attempt, so. Your Honor, that's exactly why we think that a jury should have been asked, because it was a circumstantial evidence case. In our system, we have a jury find the facts that. Is that a new rule we should adopt, that every time it's a circumstantial evidence case. No, Your Honor, but this is the Sixth Amendment. I mean, this is Booker, it's Apprendi, it's Alleyne, it's every case the Supreme Court has continued to affirm, that it's a jury's role to find the facts that are used to convict a defendant and sentence him. So it's not a new rule at all. It's an old rule. But there were cell phone records, easy pass records, purchases shortly after the robberies. He's unemployed and he buys expensive things. The calls that he made at the time of the robberies. And Mr. Goggins testified about that, Your Honor, and he did explain, you know, it wasn't unexplained wealth, as the government tried to say. He explained where the money came from. He explained the cell phones did not belong to him and the easy pass records did not belong to him. So there was certainly enough there to raise a doubt in the jury's mind, and that's why it should have been sent to the jury. There was surveillance, obviously. There was surveillance of him that, you know, only found him on April 1st and April 16th, 2002. Big day on the 16th. Right, correct. For the Roma bank robbery only, there was no surveillance, you know, tying Mr. Goggins to any of the nine completed bank robberies, though. So there was enough that a jury could have said, we think he was only involved in the Roma bank robbery, and they could have convicted him on that basis on count three for the attempt to rob the Roma bank, and on count one based on a conspiracy to rob the Roma bank, and he would have gotten a 924C that was attached to each of those two counts, even if he was never found guilty of having any involvement in any of the completed bank robberies. You know, finding ineffectiveness, you know, substandard performance by counsel takes a lot. What is it that really supports the fact that, you know, this counsel should, I mean, special interrogatories are easily available. I don't think they are. You know, what is it that should make us say, you know, counsel really should have realized that this was something he should have done? And let me add to that, what special interrogatory should have been submitted? Sure. Well, I'll start with that one because that's sort of the more straightforward answer. We think there just needed to be two on count one, and the jury could have been asked, was Mr. Goggins guilty of conspiring to rob the Roma bank, and was he guilty of conspiring to rob any of the other nine banks? And that would have answered the question of whether there could be a second 924C that attached to the completed bank robberies instead of just the Roma. Then there should only have been one 924C. And the reason, short, counsel was ineffective because anyone looking at this indictment can see that there's an overlap. And he knows that this one count is 25 years. He should have had a heightened attention to paying attention to the 924Cs. This was 25 years, which is the bulk of Mr. Goggins' sentence, and it's practically a lifetime. He knew that going in there was case law to support first the use of special interrogatories, and this court had said they're useful in complex criminal cases where there are multiple defendants, there's multiple objects of a conspiracy, and this is a time where the facts were crucial to the sentence, and it's a 25-year sentence. There was case law that said there can only be a single 924C count if there's only a single use of a gun. So all of this case law was available to him. All he had to do was do the legal research, and he would have found it. And he knew also that Mr. Goggins was situated differently from his co-defendants so that this mattered to Mr. Goggins in particular, so that he should have been separated. So then how do you get over the prejudice problem? I mean, we have Judge Thompson basically finding that he was involved in six of the robberies, and we have this evidence. What is it that should lead us to believe that the outcome would have been different? And that the judge would have given the special interrogatories. Well, that too. Well, we couldn't find him ineffective if we didn't find that the court would have, in fact, given him the special interrogatories had somebody asked for them. Right, and we think there's a reasonable probability that the judge would have given him the special interrogatories if she had been asked at trial and given the case law. Based on what? If the judge had been asked at trial to have the special interrogatories and had been given the case law from this court saying this is why it's important in complex criminal cases, we believe that she would have found this if the overlap had been pointed out at trial. Is that a holding that we've come to in other cases, or is that dicta? Not that they're required, no. It would be dicta. Different cases have pointed out where this court has found that special interrogatories are necessary. There's also case law saying that ambiguous verdicts can't stand. I mean, we have cases where verdicts are overturned or judgments are vacated on the basis of ambiguous jury verdicts. And I should point out, Mr. Goggins, the standard for prejudice is actually quite low. He just needs to show that it's something sufficient to undermine confidence in the jury's verdict. And I think there's no confidence in the jury's verdict when we don't know what the jury found. They didn't find these facts because they weren't asked to. Is it possible that this was a strategic decision because if there had been a special interrogatory set up and if there had been an enumeration of each robbery separately, that it actually could inure to Mr. Goggins' detriment? For instance, we know the district court made its findings with regard to six of the robberies and the attempt. Now, let's say there was a special interrogatory and it was enumerated with regard to each of the nine and the attempt. If the jury checked off six of the conspiracies and the attempt, wouldn't that inure to the defendant's detriment? I don't think it would have made a difference in giving him any more detriment than he already had. The judge found what she found to sentence him. It wasn't charged as six separate conspiracies, if that's what you're – Six robberies. Right, it wasn't six different counts. That's part of what you're asking, right? You're asking that we find that there should have been a special interrogatory and that the form it would take would be a separating out of each of the robberies, yes? Well, not each of the robberies, just the group one through nine, the completed robberies, to separate that from the attempted robbery that was already counted. And the question would be, do you find that he was involved in any one of these robberies? Any one of the nine. Yeah. And then – Because the 924C could have attached to any one of those nine and then it would be okay. Okay, so if we did that, then I go back to the prejudice question that Judge Rendell put to you before, right? If it's one through nine and you just have to check one box and then the attempt, which we probably could agree there's more evidence on the attempt than on the one through nine, then how do you show that there would have been a different result? It undermines confidence. Well, it undermines confidence because of the lack of evidence for the completed bank robberies. So for one through nine, there's no direct evidence tying Mr. Goggins to any of those robberies. So there's a reasonable probability that the jury would have found him or would not have found him guilty beyond a reasonable doubt on that basis and would have said he's not guilty of those. Maybe he's guilty on April 16th of the attempted robbery of the Roma Bank, and so he could be guilty of a conspiracy just to rob the Roma Bank and still be guilty on count one, but he would not be able to get a second 924C for that for just the one use of the firearm. Roma was included in count one? Correct. So yeah, count one counted as the conspiracy, nine completed bank robberies, and then Roma Bank as a separate object of the conspiracy, and that's how it got counted twice in counts one and count three. I think it's important to note the rule of lenity applies, and in particular in this case. This is an ambiguous verdict. It's an ambiguous statute that we're talking about, and this Court has found in Diaz that application of the rule of lenity is particularly appropriate in the context of Section 924C because of its mandatory consecutive sentences and extremely harsh penalties for subsequent convictions. Now, we have no case on this issue in our court. In the Third Circuit, this Court, you're right, has Correct. But you're saying you should have anticipated the Well, three other courts of appeals at the time of Mr. Goggins' trials had considered this exact issue. So the Second Circuit, the Fifth Circuit, and the D.C. Circuit had all addressed this exact issue. In terms of ineffectiveness? No, it was not ineffective. Well, at the time, he didn't need to show ineffectiveness. He needed to show that this is, you know, this is the rule, and this is why he should have been asking for special interrogatories to begin with. Was Diaz inconsistent with Cassiano? No, and I wondered about that. No, Your Honor, it's not. I've been reading them. And I think in the court in Diaz pointed out that Cassiano doesn't apply here because there are two uses and two predicates. So in Diaz, it was two predicates. Therefore, Cassiano doesn't control because there were two predicates in there. And here, Cassiano doesn't control here because there were two uses in Cassiano. And, you know, I think our chart in our reply brief separated those out. So when there are two uses and two predicates, fine, you can have two 924C counts. But if you're missing one side or the other side, only 924C can lie there. And the Supreme Court has said that recently in Rosemont when they said it's a combination crime. So you need to have both a use and a predicate. Thank you, Your Honors. Thank you. We'll hear from Henry Bell. May it please the Court. Glenn Moore, Marco, on behalf of the United States. I think the Court is correct to focus on the prejudice prong, and I think that's really where this case, you know, is sunk for Mr. Goggins. The evidence in this case was overwhelming. When you really look at what sunk all of the defendants, they were all in the same situation in the sense that they all would have benefited in the same way from having a special interrogatory because they all had the possibility that they were convicted on just the attempt. Except as the evidence as to the others was much stronger. I mean, it was somewhat stronger. I mean, the best evidence in this case were the cell phone records and the easy pass records because the witnesses, frankly, weren't all that helpful because very few could identify individuals who were involved in the case. But it wasn't his car, was it? No, it wasn't his car. It was Mr. Blackwell's car. Oh, that's right. It was Mr. Blackwell's car. The cell phone records, but basically Mr. Goggins is wearing a tracking device during three of these robberies. I mean, you can trace it from his house to the bank, calls being made while the bank robbery is in progress, the phone goes back to his house. There's not much more you need to convict a defendant. Remember, he's found on April 16th, the day of the attempt. All four of them, they're tracked again from their house. They go to the scene of the crime. They've got the bank robbery kit with them. They're arrested. So that one is pretty much a lock. So the only question is, did he join that day or was he a member before? What we tried to show was obviously the MO of all the crimes were very, very similar. What we know is from the very first crime, he had the large unexplained cash payments. And we know from the cell phone records that during three of these, now we know he was in jail for two of them. Okay. So we give him those. But for three of them, we trace his phone, you know, from the beginning of the day to the end of the day and to the bank location. So there's not much possibility. And obviously Judge Thompson, who sat through the entire trial, found beyond a reasonable doubt that he was involved in six. So this academic question of if the jury had been asked to decide which particular ones were found or not found, is really beside the point. And I do think because of the strength of the cell phone evidence, it really isn't fair to say that the others, you know, were weaker. There was one case that there was one who had DNA evidence.  And there was a videotape that was kind of grainy that showed, you know, two of the individuals. Or, you know, you could certainly think. But it wasn't sort of rock solid so much as the cell phone records were. Now you were urging that this was already resolved and that the certificate of appealability was improvidently granted. Are you pressing that argument? Well, I did the prior appeal. I don't want to press you somewhere where you don't need to go. But I really felt like it was decided. I mean, this was an issue that Coleman tried to raise, and he was talking about the circumstances of the case. They're trying to frame it as the prior case decided that you need two predicates. He was arguing there was just one predicate act here. But clearly that's not what he was arguing because there were two different predicates. One was the conspiracy and one was the attempt. So he wasn't trying to argue that. And they quoted from my brief where I said the real issue in this case is whether or not there were two predicates is saying that's what the court decided. What I was saying in my brief is you can't accept his characterization of the facts as leading to two predicates. What I was saying is the issue for the court is if there are two predicates, then we automatically win. And so I was reframing the question from what he was trying to argue. I mean, I went on the prejudice prong, so if you're going to go that way, you know, I'm happy. But I'm not going to concede that it wasn't decided. And I do think. Do you agree that this case presents a single use of a firearm? I don't actually. I mean, and I disagree for two different reasons. One reason I disagree is that in just the attempt you had two firearms, and some of the cases have diverged there. In the conspiracy, we were charging a series of nine completed bank robberies plus the one attempt. So there were 18 uses of a firearm. I mean, each time you had two people go in, brandish the firearms. And so it's an interesting academic question about whether or not you could do this if there were just a single use. But you've got two guns in the other one,  And that's how the case was presented to the jury. It is absolutely true, as they suggest, that when we were talking about guilt on the conspiracy charge, we said you can join it at the end. But the prosecutor did make a separate argument when talking about the guns, the gun charges. And when he was talking about the gun charges, he was talking about the nine times two people went into the bank brandishing guns. And then for the attempt he said, and don't forget the two, for the attempt he said don't forget the two that were found in the car that day. So while the jury wasn't instructed that they had to find it that way, we're really sort of reframing the issue in a very hypothetical sort of way here. The evidence really was quite strong. And the ineffective assistance of counsel claim, I think the court is right to suggest, it's a very high standard here. And I would suggest that, you know, reading Cassiano, it was not unreasonable for these attorneys, if they had done that, obviously we don't know, to think that you could in fact do this the way it was charged. And that a separate interrogatory wouldn't have been successful. But Cassiano certainly suggests when you. And that was a third circuit case. It certainly was. Yeah, I mean it's interesting, I don't know if we need to get into it. You suggested whether Diaz and Cassiano were consistent. I'm not worried about that. Yeah, I would say that Diaz is a much more generous case than Cassiano was. Much more lenient. Yes, yes. And Cassiano was closer in time to the Deal decision, and I think Deal was. What about the one that took the priest? Oh, yes, that was Cassiano, yes. That was Cassiano. Horrible, horrible facts there. They really are. Yeah. Yeah, I know. Yeah, and not great facts in this case either, though. I mean these victims here, whether they were tellers or bank customers, were put through a lot. They were tied up. They were held at gunpoint. They were made to crawl on the floor. They were put in different rooms. This was a pretty horrific crime, and so Judge Thompson didn't really have any problem with the sentences that were imposed. This did go back on to. Judge Thompson? She's a sweetheart. But this did go back on a Booker remand, and she did not impose the mandatory minimum on these individuals. And I do want to say, again, on the strength of the evidence, Mr. Goggins did testify at trial, and Judge Thompson said at sentencing that his testimony was preposterous. There just really wasn't any doubt at all. Judge Greenaway asked a question about whether this was possibly strategic. I mean, I didn't focus on that, but I do think there clearly is a guidelines potential disadvantage if you ask the jury to make a finding. Now, again, at this point, the defendants didn't know that Judge Thompson was going to find that he had participated in at least six. The grouping rules have a group, and you get extra points for each group. The way a conspiracy is charged, if it's multi-object, the judge has to make a finding if the jury has not as to which ones were found. So it may well be that counsel not only wouldn't have gotten it if they had asked for it, but some of co-counsel might easily have objected, and certainly it may not have been to his advantage. Hindsight is 20-20 now that we know that Judge Thompson found six. But there was the possibility that she would say, okay, well, anything's possible, what she would have said there. But again, you know, if the court has no further questions, I would just focus on the prejudice prong and the suggestion that you can always find harmless error in any of these things. There's no case that suggests that this kind of error, if it was error, could not be harmless. So with that, thank you. Thank you. Your Honors, the government mentioned hindsight just now, but I think their hindsight is making them a little more confident in the evidence that they had at the time. I think if the government was so confident in the evidence of Mr. Goggins' participation in bank robberies one through nine, the completed bank robberies, they could have charged any of those robberies as substantive counts. They didn't. They didn't charge 924Cs attached to each separate one because they couldn't. Presumably, trial counsel for Goggins argued, you know, the only place you really have him on site, if you will, is Roma. Correct. And tried to make that distinction between him and the others. Correct. He did, and Mr. Goggins also testified and said, it's not unexplained wealth that the government keeps saying. It's my parents' money, and I had a civil settlement. I was a drug dealer. Like, the money came from somewhere. I'm explaining it to the jury. All these things are factual issues. The phones, he said, weren't his. They weren't his phones. He was never seen using them. It was that, you know, phone calls were made to people he knew, so the government said, we think they're your phones. Mr. Goggins disputed that and said they're not. They just, you know, they happen to be going to people who I know. There was no other evidence tying him to. You mean all drug dealers deal with the same people. They might, Your Honor. I don't know. I'm a drug dealer. I'm not a bank robber. Right. It's a convincing defense. You know, it's important. It's for the jury to find, and I think that's the point here, is that we shouldn't be basing 25 years of someone's life based on a guess when our whole system is based on a jury finds the facts to put someone in prison. That's not what happened here. This is a judge. So what were the special, and let's let this hand to this prejudice business. What were the special interrogatories he should have asked? He should have asked, first, was Mr. Goggins guilty of conspiring to rob the Roma Bank? And second, was Mr. Goggins guilty of conspiring to rob any of the other nine banks listed in the indictment? But how do we come to the conclusion, and I'm obviously going to be corrected about the imprecise use of the standard, but how do we come to the notion that the result would have been different if we know that the judge has made a credibility finding that Mr. Goggins isn't credible, there is more than a little circumstantial evidence, albeit, that clearly points to his participation despite his denials about the credit cards. In fact, him being on site at Roma, right, obviously lends credibility to the notion that he was involved in the six that Judge Thompson came to determine that he was involved in. So we keep coming back to it because we're just having trouble with that. Sure. Well, again, this is what a jury is supposed to find, and we think there was enough there to undermine confidence in the verdict. That's the standard that Mr. Goggins needs to meet on ineffective assistance. It's not a high standard for him. It's less than a preponderance of the evidence. Is there a chance that the jury would have come out differently? And based on the way that this case was framed in the indictment, the government argued from the start you can find him guilty based only on the Roma bank robbery. They argue in summation. You can find that Mr. Goggins joined the conspiracy on April 15th, April 16th. He'd still be guilty of the whole conspiracy. But that is under current Third Circuit and Supreme Court law accurate. That is accurate as to the conspiracy, but the way that that ties the 924C count into it, he would have improperly gotten a second 924C because the jury instructions also said for count two, the 924C count that attached to the conspiracy, it said if guns were used in connection with the conspiracy. So the jury could look and they could see guns on the evidence table. They're the guns that were recovered on April 16th. Those are the guns that you could tie to count four, the attempts to rob the Roma bank. And you can say, well, those are part of the conspiracy, too, because there's a conspiracy to rob the Roma bank. Those guns were used during the conspiracy. And your point is why would the government kind of go out of its way to say, oh, you can find him guilty even if it's only Roma if they didn't think there was a distinct possibility that the jury would say, oh, he was only involved in Roma. That's exactly right, Your Honor. And that's the whole frame of the case was that way. To make sure that he was found guilty on count one, the problem is that count two included this additional 25-year sentence, and we're just guessing. The case is well argued. And thank you again to the Deckert firm. Thank you, counsel. Well argued. We'll take it under advisement.